UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

ORQUIDEA DE JESUS LINARES and JOSE BISMARK   :
MIRANDA LOPEZ, on behalf of themselves and all   :
others similarly situated,   :
  :     **No. 26 Civ. 5843**
                    Plaintiffs,   :
  :
     -against-   :     **COLLECTIVE AND CLASS**
  :         **ACTION COMPLAINT**
EAT REAL TACOS LLC, TM HARLEM INC., TACO   :
MIX LLC, MI MEXICO DO CORP., FOOD U CORP.,   :     **JURY TRIAL DEMANDED**
PUEBLA DELIV CORP., RANCHO GR CORP., TACO   :
MIX BRONX TERMINAL INC., JORGE SANCHEZ,   :
and JUANA SANCHEZ,   :
  :
                 Defendants.   :

-------------------------------------------------------------------- X

Plaintiffs Orquidea De Jesus Linares and Jose Bismark Miranda Lopez (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of Defendants Eat Real Tacos LLC, TM Harlem Inc., Taco Mix LLC, Mi Mexico Do Corp., Food U Corp., Puebla Deliv Corp., Rancho GR Corp., Taco Mix Bronx Terminal Inc. (collectively, "Taco Mix" or the "Corporate Defendants"), Jorge Sanchez, and Juana Sanchez (collectively, "Defendants"), allege:

**NATURE OF THE ACTION**

1. Plaintiffs were employed as restaurant workers at Taco Mix, which has been ranked by the New York Times as one of the top 100 New York City restaurants, Plaintiffs regularly worked up to eighty-four hours per workweek, but were paid at the same hourly wage rate for all hours worked, including those over forty. Defendants further failed to pay Plaintiffs spread-of-hours pay, an additional hour's pay at the minimum wage rate on days when their shifts spanned more than ten hours, and failed to furnish Plaintiffs with wage notices at the time of hiring and

compliant wage statements at the end of each pay period.

2.     Plaintiffs bring this action on behalf of themselves and all similarly situated restaurant workers (the "Restaurant Workers") to recover unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), and the New York State Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3.     This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred primarily in Manhattan, within this District.

## THE PARTIES

**Plaintiff Orquidea De Jesus Linares**

5.     Orquidea De Jesus Linares resides in the Bronx, New York.

6.     De Jesus Linares worked for Defendants as a cashier from approximately February 2019 to May 2026.

**Plaintiff Jose Bismark Miranda Lopez**

7.     Jose Bismark Miranda Lopez resides in the Bronx, New York.

8.     Miranda Lopez worked for Defendants as a food preparer and cook from March 13,

2022 to June 23, 2026.

**Defendant Eat Real Tacos LLC**

9. Defendant Eat Real Tacos LLC is a New York limited liability company and does business as Taco Mix, a restaurant located at 234 E 116th Street, New York, New York 10029.

10. Eat Real Tacos LLC is an "enterprise engaged in commerce" within the meaning of the FLSA.

11. Eat Real Tacos LLC has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

12. In each of the three years preceding the filing of this Complaint, Eat Real Tacos LLC's annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant TM Harlem Inc.**

13. Defendant TM Harlem Inc. is a New York corporation and does business as Taco Mix, a restaurant located at 234 E 116th Street New York, New York 10029.

14. TM Harlem Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

15. TM Harlem Inc. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

16. In each of the three years preceding the filing of this Complaint, TM Harlem Inc.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

3

**Defendant Taco Mix LLC**

17.    Defendant Taco Mix LLC is a New York limited liability company and does business as Taco Mix, operating a restaurant located at 234 E 116th Street, New York, New York 10029.

18.    Taco Mix LLC is an "enterprise engaged in commerce" within the meaning of the FLSA.

19.    Taco Mix LLC has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

20.    In each of the three years preceding the filing of this Complaint, Taco Mix LLC's annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant Food U Corp.**

21.    Defendant Food U Corp. is a New York corporation located at 234 East 116th Street, Apt. 12, New York, New York 10029.

22.    Food U Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

23.    Food U Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

24.    In each of the three years preceding the filing of this Complaint, Food U Corp.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant Mi Mexico Do Corp.**

25.    Defendant Mi Mexico Do Corp. is a New York corporation located at 1986 Amsterdam Avenue, New York, New York 10032.

26.    Mi Mexico Do Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

27.    Mi Mexico Do Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

28.    In each of the three years preceding the filing of this Complaint, Mi Mexico Do Corp.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant Puebla Deliv Corp.**

29.    Defendant Puebla Deliv Corp. is a New York corporation located at 1986 Amsterdam Avenue, New York, New York 10032.

30.    Puebla Deliv Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

31.    Puebla Deliv Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

32.    In each of the three years preceding the filing of this Complaint, Puebla Deliv Corp.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant Rancho GR Corp.**

33.    Defendant Rancho GR Corp. is a New York corporation located at 234 East 116th Street, Apt. 12, New York, New York 10029.

34.    Rancho GR Corp. is an "enterprise engaged in commerce" within the meaning of the FLSA.

35.    Rancho GR Corp. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

36.    In each of the three years preceding the filing of this Complaint, Rancho GR Corp.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Defendant Taco Mix Bronx Terminal Inc.**

37.    Defendant Taco Mix Bronx Terminal Inc. is a New York corporation that owns and operates a Taco Mix restaurant located at 610 Exterior Street B Building, Level 4, Bronx, New York.

38.    Taco Mix Bronx Terminal Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

39.    Taco Mix Bronx Terminal Inc. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

40.    In each of the three years preceding the filing of this Complaint, Taco Mix Bronx Terminal Inc.'s annual gross volume of sales, individually and collectively with the other Taco Mix, exceeded $500,000.

**Corporate Defendants "Taco Mix"**

41.     Throughout the six years prior to the filing of this Complaint (the "Liability Period"), the Corporate Defendants have had unified operations and done business as "Taco Mix."

42.     During the Liability Period, the Corporate Defendants have operated the Taco Mix restaurant located at 234 E 116th Street, New York, New York ("E 116th Taco Mix") as well as other Taco Mix restaurants located at 586 West 207th Street, New York, New York ("Bronx Taco Mix"); 610 Exterior Street B Building, Level 4, Bronx, New York ("South Bronx Taco Mix"); and 220 36th Street, Brooklyn, New York ("Brooklyn Taco Mix").

43.     During the Liability Period, the Corporate Defendants have shared administrative and office staff.

44.     Throughout the Liability Period, the Corporate Defendants served the same customers using the same Restaurant Workers and with the same menu offerings.  *See* https://tacomix.com/ (last accessed July 7, 2026).  For example, Plaintiffs were required to work at the South Bronx Taco Mix on occasion.

45.     Throughout the Liability Period, the Corporate Defendants have used the same website (*id.*) and social media accounts (https://www.instagram.com/tacomixusa/?hl=en).

46.     Taco Mix is among the New York Times's 2026 list of the 100 Best NYC Restaurants    (https://www.nytimes.com/interactive/2026/dining/best-nyc-restaurants.html#taco-mix) and recently named "Likely New York's No. 1 al pastor destination" by New York Magazine (https://nymag.com/listings/restaurant/taco-mix/).

47.     The Corporate Defendants pay its employees using checks from Eat Real Tacos LLC, TM Harlem Inc., Taco Mix LLC, Mi Mexico Do Corp., Food U Corp., Puebla Deliv Corp., Rancho Gr. Corp., Taco Mix Bronx Terminal Inc., or other related corporations.

48.     For example, Plaintiffs' weekly wages were partially paid by checks from Eat Real Tacos LLC, TM Harlem Inc., Mi Mexico Do Corp., Food U Corp., Puebla Deliv Corp., Rancho Gr. Corp., Taco Mix Bronx Terminal Inc., Food Express Group Corp., or Cocina MX Corporation.

**Defendant Jorge Sanchez**

49.     Defendant Jorge Sanchez is the owner of Taco Mix and has been since he opened the first Taco Mix in East Harlem in 1991.  *See* https://tacomix.com/about-us (last accessed July 7, 2026).

50.     Jorge Sanchez signed Plaintiffs' wage payments and had the power to hire and fire Restaurant Workers, including Plaintiffs.

51.     Jorge Sanchez, along with Taco Mix's ownership and management, chose to pay Plaintiffs and other Restaurant Workers at the same hourly wage rate for all hours worked, including for hours worked over forty per workweek.

52.     Jorge Sanchez chose not to issue Plaintiffs and other Restaurant Workers wage notices and accurate wage statements as required by NYLL §§ 195(1) and 195(3).

53.     Jorge Sanchez exercised sufficient control over the operations of Taco Mix to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendant Juana Sanchez**

54.     Defendant Juana Sanchez is Defendant Jorge Sanchez's daughter and has served as an officer of the Taco Mix throughout the Liability Period.

55.     Defendant Juana Sanchez is listed as the Chief Executive Office on the New York Department of State for TM Harlem Inc., Mi Mexico Do Corp., Food U Corp., Puebla Deliv. Corp., and Rancho Gr. Corp.

56.     Juana Sanchez had the power to hire and fire Restaurant Workers from the Taco

Mix, including Plaintiffs.

57.    Juana Sanchez primarily managed the Brooklyn Taco Mix, but also managed the Restaurant Workers throughout all of the Taco Mix locations, including Plaintiffs.

58.    During the Liability Period, Juana Sanchez, along with Taco Mix ownership and management, chose to pay Plaintiffs and other Restaurant Workers at the same hourly wage rate for all hours worked, including for hours worked over forty per workweek.

59.    During the Liability Period, Juana Sanchez chose not to issue Plaintiffs and other Restaurant Workers wage notices and wage statements, in violation of NYLL §§ 195(1) and 195(3).

60.    Juana Sanchez exercised sufficient control over the operations of the Taco Mix to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

61.    Throughout the Liability Period, Plaintiffs and other Restaurant Workers have performed restaurant work including cashiering, food preparation, taco making, cooking, and cleaning at Taco Mix.

62.    Throughout their employment, Plaintiffs and other Restaurant Workers regularly worked more than forty hours per workweek but were paid at the same hourly wage rate for all hours worked, including those over forty.

63.    Throughout the Liability Period, Defendants failed to furnish Plaintiffs and other Restaurant Workers with accurate wage statements with each payment of their wages that accurately reflected their regular rate, overtime rate, hours worked, and other information as required by the WTPA.

64.    Defendants failed to furnish Plaintiffs and other Restaurant Workers with wage

9

notices at the time of their hiring or when their rates of pay changed.

65.    Failing to inform Plaintiffs and the Restaurant Workers of their actual hours worked and proper regular and overtime rates were part of Defendants' scheme to deprive them of their unpaid wages and overtime compensation.

66.    As a result of Defendants' failure to provide Plainitffs and the Restaurant Workers with accurate wage notices when they were hired and accurate wage statements with each payment of wages, Plaintiffs and the Restaurant Workers suffered concrete harm.

67.    By routinely failing to provide Plaintiffs and the Restaurant Workers with accurate information, the Defendants made it more difficult for Plaintiffs and the Restaurant Workers to determine whether and to what extent they were underpaid each week, thus, impinging on their rights and ability to advocate for proper pay.

68.    As a result of Defendants' actions, Plaintiffs and the Restaurant Workers were deprived of the information necessary to determine the full extent of the hours they worked, whether they were properly compensated, and the amount of wages owed to them, thereby impairing their ability to take timely and appropriate action to recover unpaid wages.

69.    Moreover, Defendants paid Plaintiffs and other Restaurant Workers through a combination of cash and checks issued by the various Corporate Defendants and other miscellaneous corporations.

70.    Defendants have been aware or should have been aware that their pay and notice practices violate the FLSA and NYLL. Defendants have previously been the subject of federal wage-and-hour litigation in this District. *See Rosales Medina et al. v. Taco Mix LLC et al.*, No. 1:17-cv-05637 (S.D.N.Y. May 30, 2025) (satisfaction of judgment in the amount of $98,603.00 for FLSA and NYLL violations); *Sanchez-Torres v. Sanchez et al.,* No. 19-cv-4222 (S.D.N.Y. Feb.

10

9, 2022) (approving settlement for $40,000 for FLSA and NYLL violations); *Rodriguez v. Taco Mix LLC et al.*, No. 1:21-cv-03644 (S.D.N.Y. Nov. 11, 2023) (approving settlement for $52,800 for FLSA and NYLL violations).

**Orquidea De Jesus Linares's Wages Paid and Hours Worked**

71.    Throughout her employment, De Jesus Linares regularly worked more than forty hours per workweek,and regularly worked shifts spanning more than ten hours.

72.    From approximately 2019 through early 2024, De Jesus Linares regularly worked between approximately fifty to sixty hours per workweek.

73.    For example, for the workweek ending July 5, 2022, Defendants paid De Jesus Linares $816 for 51.3 hours worked; for the workweek ending August 2, 2022, Defendants paid De Jesus Linares $861 for 52.14 hours worked; for the workweek ending October 25, 2022, Defendants paid De Jesus Linares $933 for 56.53 hours worked; and for the workweek ending January 24, 2023, Defendants paid De Jesus Linares $904 for 51.25 hours worked.

74.    Defendants paid De Jesus Linares the same hourly rate for all hours worked, including for hours worked over forty per workweek, without paying any overtime premium.

75.    On days when Defendants required De Jesus Linares to work shifts spanning more than ten hours, Defendants failed to pay her an additional hour's pay at the minimum wage rate.

**Jose Bismark Miranda Lopez's Wages Paid and Hours Worked**

76.    Miranda Lopez worked for Defendants as a food preparer, and later as a taco maker, from approximately March 13, 2022 to June 23, 2026.

77.    From approximately March 2022 through May 2022, Defendants required Miranda Lopez to work between six to seven days per week, from approximately 3:00 p.m. to 3:00 a.m., regularly working approximately seventy-two to eighty-four hours per workweek.

78.     From approximately June 2022 through September 2022, Defendants required Miranda Lopez to work six days per week, from approximately 3:00 p.m. to 3:00 a.m., regularly working approximately seventy-two hours per workweek.

79.     From approximately October 2022 through August 2024, Defendants required Miranda Lopez to work five to six days per week, from approximately 7:00 p.m. to 7:00 a.m., regularly working approximately sixty to seventy-two hours per workweek.

80.     From approximately August 2024 through the end of his employment, Defendants required Miranda Lopez to work five to six days per week, from approximately 7:00 a.m. to 7:00 p.m., with a thirty-minute break per shift, regularly working approximately fifty-seven and one half to sixty-nine hours per workweek.

81.     Throughout his employment, Defendants paid Miranda Lopez the same rate per hour for all hours worked, including for hours worked over forty per workweek.

82.     For example, for the workweek ending October 11, 2022, Defendants paid Miranda Lopez total wages of $1,018 for 59.88 hours worked; for the workweek ending October 18, 2022, Defendants paid Miranda Lopez total wages of $1,083 for 63.72 hours worked; for the workweek ending November 1, 2022, Defendants paid Miranda Lopez total wages of $1,063 for 62.55 hours worked; and for the workweek ending December 13, 2022, Defendants paid Miranda Lopez total wages of $1,451 for 85.33 hours worked.

83.     On days when Defendants required Miranda Lopez to work twelve-hour shifts, Defendants failed to pay him an additional hour's pay at the minimum wage rate.

**COLLECTIVE ACTION ALLEGATIONS**

84.     Plaintiffs bring this action on behalf of themselves and all similarly situated Restaurant Workers who have worked for Defendants within the three years prior to the filing of

12

this Complaint and who elect to opt-in to this action (the "FLSA Collective").

85.    The FLSA Collective consists of Restaurant Workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

86.    Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have regularly worked more than forty hours per workweek, have performed virtually the same work duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

87.    Defendants are aware or should have been aware that the FLSA required them to pay Restaurant Workers an overtime premium for hours worked in excess of forty per workweek.

88.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

89.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated Restaurant Workers can be readily identified and located through Defendants' records. The similarly situated Restaurant Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

**CLASS ACTION ALLEGATIONS**

90.    Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated Restaurant Workers who work or have worked for Defendants within the six years prior to the commencement of this action (the "Rule 23 Class").

91.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

92.     The size of the Rule 23 Class is not fully known, as the precise number of such employees is within the sole control of Defendants.

93.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

94.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including the following:

   a. whether Defendants violated NYLL Article 6, § 190 *et seq.*, and Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor regulations, as alleged herein;

   b. whether Defendants failed to pay Restaurant Workers at the correct overtime rate for all time worked in excess of forty hours per week;

   c. whether Defendants failed to pay Restaurant Workers spread-of-hours pay on days when they worked shifts spanning more than ten hours;

   d. whether Defendants failed to provide Restaurant Workers with accurate wage statements as required by the NYLL and WTPA;

   e. whether Defendants failed to provide Restaurant Workers with wage notices as required by the NYLL and WTPA; and

   f. the nature and the extent of the class-wide injury and the measure of damages for those injuries.

95.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the Liability Period. They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek and to receive spread-of-hours pay on days when their shifts span more than ten hours. Plaintiffs and the members of the Rule 23

Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

96. Plaintiffs and the Rule 23 Class have all been injured in that they have been undercompensated due to Defendants' common policies, practices, and patterns of conduct.

97. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

98. Plaintiffs have retained legal counsel competent and experienced in wage-and-hour litigation and class action litigation.

99. There is no conflict between Plaintiffs and the Rule 23 Class members.

100. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

101. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM
### (FLSA – Unpaid Overtime)

102.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

103.   Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates per hour worked in excess of forty per workweek.

104.   Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

105.   Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

106.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

107.   Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## SECOND CLAIM
### (NYLL – Unpaid Overtime)

108.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

109.   Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1-1/2) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

110.   Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and

supporting NYDOL regulations, and employed Plaintiffs and the Rule 23 Class.

111.   Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1-1/2) times their regular hourly rates of pay per hour worked in excess of forty per workweek.

112.   Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

113.   Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (NYLL – Failure to Pay Spread-of-Hours Pay)

114.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

115.   Defendants willfully failed to pay Plaintiffs and the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts spanning over ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 NYCRR § 142-2.4.

116.   Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## FOURTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

117.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

118.   The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of

17

pay.

119. Defendants failed to furnish Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to their rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of NYLL § 195(1).

120. Defendants' failure to comply with NYLL § 195(1) goes beyond mere technical violations. It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiffs and the Rule 23 Class their overtime and spread-of-hours wages due. By concealing this information, Defendants avoided informing Plaintiffs and the Rule 23 Class of their legal rights and thereby avoided paying them overtime wages and spread-of-hours pay per workweek as alleged in this Complaint. Had Plaintiffs received this information, they would have known that they were not being paid the statutory overtime wages and spread-of-hours pay, which would have allowed them to complain about Defendants' wage payment failures alleged here.

121. As a result of Defendants' violations of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

**FIFTH CLAIM**
**(NYLL WTPA – Failure to Provide Accurate Wage Statements)**

122.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

123.   The NYLL and WTPA require employers to provide employees with an accurate wage statement with each payment of wages.

124.   Defendants' failure to comply with NYLL § 195(3) goes beyond technical violations. It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiffs and the Rule 23 Class their overtime and spread-of-hours wages due.

125.   As part of their general practice and policy, Defendants paid Plaintiffs and the Rule 23 Class with informal receipts or checks that did not reflect their regular and overtime wage rates or spread-of-hours pay due, thereby preventing Plaintiffs and the Rule 23 Class from knowing whether they received all pay at the correct wage rates due for all hours worked per workweek. Defendants did this on purpose to conceal from Plaintiffs that they were supposed to receive overtime and spread-of-hours pay.

126.   As a result of Defendants' violations of NYLL § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.   certify this case as a class action pursuant to Rule 23 for the class of employees described herein, designate Plaintiffs as class representatives, and designate Plaintiffs' counsel as Class Counsel;

19

b.      certify this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.      declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

d.      declare that Defendants have violated the spread-of-hours provisions of the NYLL and supporting regulations;

e.      declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

f.      declare that Defendants' violations of the FLSA and NYLL were willful;

g.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

h.      award Plaintiffs and the Rule 23 Class unpaid spread-of-hours pay;

i.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with wage notices upon hiring and accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

j.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

k.      award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

20

l.    award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

m.    award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
            July 10, 2026

PECHMAN LAW GROUP PLLC

By: _____
        Louis Pechman
        Miguel Tapia Colin
        Pechman Law Group PLLC
        488 Madison Avenue, 17th Floor
        New York, New York 10022
        Tel.: (212) 583-9500
        pechman@pechmanlaw.com
        tapiacolin@pechmanlaw.com

        *Attorneys for Plaintiffs, the*
        *Putative FLSA Collective, and Putative*
        *Rule 23 Class*

21